IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02656-LTB

KATRINA BAGWELL and LUKE BAGWELL,

    Plaintiffs,

v.

 BOSTON SCIENTIFIC CORPORATION,

    Defendant.

---

**PLAINTIFFS KATRINA BAGWELL AND LUKE BAGWELL'S RESPONSE IN OPPOSITION TO DEFENDANT BOSTON SCIENTIFIC CORPORATION'S RENEWED MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

---

## INTRODUCTION

In its Renewed Motion for Summary Judgment and Memorandum in Support ("Def. Brief"), Defendants at best grossly omits critical facts in this case – facts that demonstrate unequivocally that Plaintiffs Katrina and Luke Bagwell served and filed their lawsuit against Boston Scientific Corporation ("Boston Scientific") within Colorado's statutes of limitations. Indeed, Boston Scientific does not even acknowledge in its motion and memorandum the multidistrict litigation ("MDL") Court's Pretrial Orders ("PTO") #47 and 53 that established a "delayed filing" procedure within the MDLs, including claims against Boston Scientific brought in MDL No. 2326. Nor does Boston Scientific acknowledge that Plaintiffs Katrina and Luke Bagwell served their complaint on Boston Scientific Corp. on May 31, 2013 – well within the statutory period – and in compliance with Pretrial Orders #47 and 53. Thus, Boston Scientific's summary judgment motion and supporting memorandum are without merit on the issue of the

1

statute of limitations, even bordering on frivolous, and must be denied, as further set forth below. Boston Scientific's remaining arguments – which are presented in boilerplate fashion – are equally flawed and, like its statute of limitations argument, omit reference to important facts and testimony that undermine Boston Scientific's arguments.

## PLAINTIFFS' STATEMENT OF FACTS[1]

1. Plaintiffs are citizens and residents of the State of Colorado. MSUMF No. 1.

2. On November 18, 2009, Ms. Bagwell was implanted by Dr. Cheryl Cowles with Defendant Boston Scientific Corporation's ("Defendant") Solyx Single Incision Sling System for the treatment of stress urinary incontinence (referred to hereafter as the "Solyx"). MSUMF Nos. 2, 3.

3. Following the implantation of Boston Scientific Corp.'s Solyx, Plaintiff Katrina Bagwell began experiencing complications including, but not limited to:

   1) severe vaginal/pelvic pain;

   2) urinary problems;

   3) painful intercourse;

   4) inability to sit for long period of time due to severe pain;

   5) inability to lift more than 25 pounds;

   6) numbness down right leg;

   7) muscle spasms; and

   8) emotional pain and suffering.

---

[1] All "MSUMF" references are to Defendant Boston Scientific's Separate Statement of Undisputed Material Facts filed in support of its Renewed Motion for Summary Judgment. All "OSUMF" references are to Plaintiffs' Separate Statement of Undisputed Material Facts filed in support of its Response to the Renewed Motion for Summary Judgment.

2

See MSUMF No. 6-8; OSUMF 8.

4. Ms. Bagwell's pain is so severe that she had to stand or lay down on a zero-gravity recliner during the entirety of her deposition. OSUMF 25.

5. Ms. Bagwell underwent two surgeries by Dr. Brian Flynn on April 10, 2014 and September 18, 2014, to remove portions of the Solyx. OSUMF No. 26.

6. Ms. Bagwell continues to receive pelvic floor physical therapy and was granted disability due to her severe mesh-related complications. OSUMF No. 27.

7. Ms. Bagwell received a Boston Scientific Corporation brochure that, after reading it, made her feel confident that the Solyx was safe and effective. OSUMF Nos. 22, 23.

8. Ms. Bagwell testified that she would not have agreed to have the Solyx implanted had she known that it could alter her life by causing: 1) permanent chronic vaginal/pelvic pain; 2) permanent dyspareunia; 3) painful sitting; and 4) that she may need subsequent surgical procedures to remove the device to treat complications. OSUMF No. 24.

9. Ms. Bagwell testified that she began attributing her injuries to the Solyx device in the summer of 2011. MSUMF 9, OSUMF 9.

10. The first day of summer was June 22, 2011.[2] Thus, Plaintiffs had until, at the earliest, June 22, 2013 to file their complaint under Colorado's two-year statute of limitations.

11. Plaintiffs' Complaint is deemed filed as of May 31, 2013, pursuant to the MDL's PTO Nos. 47 and 53, and thus was filed within two years of the summer of 2011 discovery of the cause of Ms. Bagwell's injuries. OSUMF No. 10, 13-21; MSUMF 9 and OSUMF 9.

---

[2] *See* https://news.nationalgeographic.com/news/2011/6/100621-summer-solstice-2011-first-day-of-summer-longest-year-science-winter-google/.

12. On May 29, 2013, the MDL Court entered PTO 47, approving an agreement between the parties concerning the delayed filing of complaints. OSUMF Nos. 13-14.

13. On August 29, 2013, the MDL Court entered PTO 53, which only slightly amended PTO 47 by requiring compliance with Rule 11(b) of the Federal Rules of Civil Procedure, clarifying that the agreement did not apply to claims submitted by foreign citizens after July 22, 2013, and changing the filing deadline under the Agreement to January 15, 2014. OSUMF Nos. 13.

14. Like PTO 47, PTO 53 provided, in pertinent part:

> Claimants and Defendants agree that from the Effective Date of this Agreement until and including October 1, 2013, all new complaints (1) effectively served, or (2) forwarded to Defendants pursuant to the Pre-Trial Orders applicable in each MDL Proceeding for waivers of service (hereinafter "the date of service") shall be deemed filed as of that date. No further filing in the court is necessary during that period of time. During that period of time, the date of service shall be treated as the date of filing for the claims specifically asserted in the complaint with regard to the application of any statute of limitations, statutes of repose, or any other laws, statutes or codes of any jurisdiction anywhere that define, limit, proscribe and/or restrict the time period within which a lawsuit, claim and/or proceeding may be commenced.

OSUMF No. 14.

15. The Effective Date of PTO 53 remained May 15, 2013. OSUMF 15.

16. PTO 53 also provided that "[t]his Agreement shall automatically terminate on October 1, 2013. Following that date, the claimants shall have until January 15, 2014 to file with the clerk any action served, but not previously filed, pursuant to the terms of this Agreement." OSUMF 17.

17. Additionally, PTO 53 provided that: "The claimants will commence filing the complaints on or before September 1, 2013. At the time for filing, a plaintiff must also file a Notice of Service under Delayed Filing Agreement which reflects the date the complaint was served or forwarded to defendant(s)…." OSUMF No. 19.

4

18. Thus, PTO 53 allowed plaintiffs to delay filing a complaint by serving their complaint on defendants between May 13, 2013 and October 1, 2013, as long as they filed their lawsuit on or before January 15, 2014 and otherwise complied with PTO 53, including filing a Notice of Service under Delayed Filing Agreement reflecting the date the complaint was served or forwarded to Defendant(s).  OSUMF 13-15, 17, 19.

19. On May 31, 2013, Plaintiffs served their Short Form Complaint on Boston Scientific Corporation via email to BSCwaiversmesh@shb.com. OSUMF 16.

20. On October 8, 2013, prior to PTO#53's January 15, 2014 filing deadline, Plaintiffs filed their complaint in the MDL. OSUMF No. 18.

21. Plaintiffs also filed the Notice of Service Under Delayed Filing Agreement reflecting that the SFC was previously served on Boston Scientific Corporation on May 31, 2013, in compliance with PTO 53. OSUMF No. 20.

22. In her SFC, Plaintiff Katrina Bagwell asserted claims for:

    1)    Negligence;

    2)    Strict liability - Design defect;

    3)    Strict Liability - Manufacturing defect;

    4)    Strict Liability – Failure to Warn;

    5)    Breach of Express Warranty;

    6)    Breach of Implied Warranty;

    7)    Discovery Rule, Tolling and Fraudulent Concealment; and

    8)    Punitive Damages

MSUMF No. 11.

23. Plaintiff's husband, Luke Bagwell, also asserted a claim for loss of consortium. MSUMF No. 12.

24. Plaintiffs has served the expert report of Dr. Bruce Rosenzweig in this case.

25. Dr. Rosenzweig's report states, among other things, that the polypropylene in the BSC Mesh Products is not suitable for its intended application as a permanent prosthetic implant for stress urinary incontinence in women and that Boston Scientific utilized Marlex polypropylene resin in its Solyx device, knowing that this material was not intended for use as a permanent implant in the human body. OSUMF No. 28, 30, 32.

26. Dr. Rosenzweig's report states that polypropylene mesh creates a chronic foreign body reaction, which leads to severe complications, including the possibility of multiple erosions that can occur through one's lifetime, chronic and debilitating pelvic pain, recurrence or worsening of incontinence, dyspareunia that can be chronic, wound infection, rejection of the mesh, sexual dysfunction, urinary and defecatory dysfunction, vaginal scarring, would healing problems, injury to ureters, bladder and urethra, pelvic abscess formation, risk of infection and/or the need for additional surgeries, among other problems. OSUMF No. 28.

27. Dr. Rosensweig cites evidence that Boston Scientific did not conduct any clinical trials on Solyx prior to marketing it as a permanent medical implant.  It then knowingly failed to warn physicians that it did not know if the mesh was safe or effective for human use. OSUMF No. 29.

28. Dr. Rosenweig explains and cites evidence that Solyx carries many serious risks and design defects, and that Boston Scientific was aware of these risks and defects but failed to warn resin suppliers, healthcare providers and patients. OSUMF No. 29, 31, 32.

## SUMMARY JUDGMENT STANDARD OF REVIEW

### I.     SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A court's function is not to "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court should draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The non-moving party must "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.* A genuine issue exists if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.*

# ARGUMENT[3]

## I. PLAINTIFFS' COMPLAINT WAS TIMELY SERVED ON DEFENDANTS WITHIN COLORADO'S TWO AND THREE-YEAR STATUTES OF LIMITATIONS

In its Def. Brief, Boston Scientific Corporation omits critical facts in this case – facts that demonstrate unequivocally that Plaintiffs Katrina and Luke Bagwell served and filed their lawsuit against Boston Scientific Corporation within Colorado's statutes of limitations. Indeed, Boston Scientific Corporation does not even acknowledge in its Def. Brief two of the MDL Court's important Pretrial Orders Pretrial Orders that established a "delayed filing" procedure within the multidistrict litigations, including claims against Boston Scientific Corp. brought in MDL No. 2326. Boston Scientific Corporation also fails to acknowledge that Plaintiffs Katrina and Luke Bagwell served their Short Form Complaint on Boston Scientific Corp. on May 31, 2013 – within the statutory period – and in compliance with Pretrial Orders 47 and 53. Thus, Boston Scientific Corporation's summary judgment motion and supporting memorandum are without merit, even bordering on frivolous, and must be denied.

### A. Plaintiffs personal injury, strict liability, fraudulent concealment, and loss of consortium claims were timely served and filed within Colorado's two-year statutes of limitations.

Defendant is correct that under Colorado law, breach of warranty claims governed by the Uniform Commercial Code must be brought within three years after the cause of action accrues and that all other products liability claim against a manufacturer or seller must be brought within two-years. See Def. Brief at pp. 7-8 (citing C.R.S. § 13–80–101(1)(a) (3-year SOL for breach of warranty claims), C.R.S. § 13–80–106(1) (2-year SOL for all products liability claims). In

---

[3] Plaintiff does not contest Defendant's choice of law analysis in finding that Colorado law applies to Plaintiffs' substantive claims.

Colorado, the general discovery rule provides that a cause of action for injury to a person does not accrue until both the injury and its cause are known or should have been known by the exercise of reasonable diligence. C.S.R. § 13-80-108 (West).

Thus, Colorado has adopted the discovery rule to determine when a products liability action accrues. *Norris v. Baxter Healthcare Corp.,* 397 F.3d 878, 887 (10th Cir. 2005); *Persichini v. Brad Ragan, Inc.,* 735 P.2d 168, 173 n.6 (Colo. 1987). Pursuant to the discovery rule, a plaintiff must bring his product liability and misrepresentation claims within two years of when he or she is aware or should be aware, given the exercise of reasonable diligence, of all of the elements of the cause of action. C.R.S. § 13-80-108(1); *Norris*, 397 F.3d at 887; *Miller v. Armstrong World Indus., Inc.,* 817 P.111, 113-14 (Colo. 1991). "In determining when an action has accrued under a discovery-based statute of limitations, '[t]he question of when [the alleged wrongdoing] was or should have been discovered is a question of fact.'" *See Zurick v. First Amer. Title Ins. Co.,* 833 F.2d 233, (10th Cir. 1987) (holding that "plaintiffs cause of action did not accrue until he discovered, or in the exercise of reasonable diligence should have discovered, the material facts essential to show the elements of the claims asserted."); *Miller v. Armstrong World Industries, Inc.,* 817 P.2d 111 (Colo.1991) (holding that a claim for relief does not begin to accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action.); *Zinnia v. Cook,* 2009 WL 31581136, *11 (D. Colo. Sept. 29 (2009). [4]

In its Def. Brief, Boston Scientific Corp. argues that it is entitled to summary judgment because:

---

[4] Plaintiff throughout her deposition described the cause of the pain and symptoms she was experiencing as her body adjusting to the surgery as opposed to being caused by the mesh. See OSUMF Ex. 2, K. Bagwell Dep. at 126:16-127:2; 128:3-10; 130:13-22; and 137:1-7.

> Ms. Bagwell testified that she attributed her alleged injuries to the Solyx device in the Summer of 2011. (MSUMF No. 9). Plaintiffs did not file their Complaint until October 8, 2013. (MSUMF No. 10). Because Plaintiffs filed suit against Boston Scientific for damages allegedly caused by the Solyx in October 2013 – more than two years after the "Summer of 2011" – Plaintiffs' claims against Boston Scientific for negligence, strict liability (design defect, manufacturing defect, and failure to warn), fraudulent concealment, and loss of consortium are barred under Colorado law.

Def. Brief at 8-9. At best, Boston Scientific recklessly overlooked critical facts; at worst, it intentionally omitted these facts in an effort to have this Court dismiss Plaintiffs claims erroneously.

Boston Scientific must be aware that on May 29, 2013, the MDL Court entered PTO 47. OSUMF No. 13. Indeed, PTO 47 memorialized the parties' stipulation – an agreement negotiated by Boston Scientific – regarding the delayed filing of complaints. OSUMF Nos. 13-15. On August 29, 2013, the Court entered PTO 53, which only slightly amended PTO#47 by requiring compliance with Rule 11(b) of the Federal Rules of Civil Procedure, clarifying that the agreement did not apply to claims submitted by foreign citizens after July 22, 2013, and extending the date to file served claims. OSUMF Nos. 13-15, 17, 19. Like PTO 47, PTO 53 provided, in pertinent part:

> Claimants and Defendants agree that from the Effective Date of this Agreement until and including October 1, 2013, all new complaints (1) effectively served, or (2) forwarded to Defendants pursuant to the Pre-Trial Orders applicable in each MDL Proceeding for waivers of service (hereinafter "the date of service") shall be deemed filed as of that date. No further filing in the court is necessary during that period of time. During that period of time, the date of service shall be treated as the date of filing for the claims specifically asserted in the complaint with regard to the application of any statute of limitations, statutes of repose, or any other laws, statutes or codes of any jurisdiction anywhere that define, limit, proscribe and/or restrict the time period within which a lawsuit, claim and/or proceeding may be commenced.

OSUMF No. 14. PTO 53 also provided that "[t]his Agreement shall automatically terminate on October 1, 2013. Following that date, the claimants shall have until January 15, 2014 to file with

10

the clerk any action served, but not previously filed, pursuant to the terms of this Agreement." OSUMF No. 17. Additionally, PTO 53 provided that: "The claimants will commence filing the complaints on or before September 1, 2013. At the time for filing, a plaintiff must also file a Notice of Service under Delayed Filing Agreement which reflects the date the complaint was served or forwarded to defendant(s)…." OSUMF No. 19. Thus, PTO 53 allowed plaintiffs to delay filing a complaint by serving their complaint on defendants between May 13, 2013 and October 1, 2013, as long as they filed their lawsuit on or before January 15, 2014 and otherwise complied with PTO 53, including filing a Notice of Service under Delayed Filing Agreement reflecting the date the complaint was served or forwarded to Defendant(s).

On May 31, 2013, Plaintiffs served their Short Form Complaint on Boston Scientific Corporation via email to BSCwaiversmesh@shb.com. OSUMF No. 16. On October 8, 2013, prior to PTO 53's January 15, 2014 filing deadline, Plaintiffs filed their complaint along with the Notice of Service Under Delayed Filing Agreement reflecting that the SFC was previously served on Boston Scientific Corporation, pursuant to PTO 47 and PTO 53, on May 31, 2013. OSUMF No. 18, 20. Accordingly, Plaintiffs' complaint filed on October 8, 2013, relates back to the May 31, 2013 service date. OSUMF 10, 13-21. Thus, because Ms. Bagwell did not attribute her injury to the Solyx device until the summer of 2011, the Plaintiffs' personal injury, strict liability, fraudulent concealment and loss of consortium claims are timely. But by failing to acknowledge these important facts – facts Boston Scientific must have known about – Defendants have wasted this Court's, as well as the undersigned counsel's, time and resources. In light of the above, it would be appropriate for Boston Scientific to immediately withdraw the Def. Brief. If it refuses to do so, however, Plaintiffs respectfully request that this Court enter an order denying Defendant's Motion for Summary Judgment with respect to Plaintiffs' timely

11

served and filed personal injury, strict liability, fraudulent concealment and loss of consortium claims.

### B. Plaintiffs breach of warranty claims were timely served and filed within Colorado's three-year statute of limitations.

Defendant's argument concerning Plaintiffs' breach of warranty claims are similarly flawed, fail to acknowledge the Court's entry of PTO 47 and 53, and should be denied. As stated above, breach of warranty claims governed by the Uniform Commercial Code must be brought within three years.

Plaintiffs' breach of warranty claims are governed by Colorado's 3-year statute of limitations. C.R.S. § 13–80–101(1)(a). Under Colorado law, breach of warranty claims do not accrue until, in the exercise of reasonable diligence, the breach should have been discovered. C.R.S. § 13-80-108(6). Boston Scientific argues that "[a]s confirmed by Ms. Bagwell's assertion, it is undisputed that Ms. Bagwell was aware of her claimed injuries no later than August 2010. Therefore, Plaintiffs' warranty claims accrue no later than August 2010. For Plaintiffs to proceed on their claims for breach of warranty, they would have had to have filed this action by August 2013." Def. Brief at 9. Again, Defendants argument is at best recklessly or at worst intentionally misleading. Defendant is – or should be – well aware of the stipulation it entered which this Court adopted in PTO 47 and 53.  In accordance with the parties' stipulation and the Court's delayed filing orders, Plaintiffs served Boston Scientific with their SFC on May 31, 2013. OSUMF No. 16. Plaintiffs then filed their SFC on October 8, 2013 which, for purposes of the statute of limitations, relates back to the May 31, 2013 filing date. OSUMF 10, 13-21.  Thus, Plaintiffs' breach of warranty claims are deemed "filed" prior to the August 2013 date argued by Boston Scientific and, therefore, timely.

Again, by failing to acknowledge these important facts – Defendants have wasted this Court's, as well as the undersigned counsel's, time and resources. In light of the above, it would be appropriate for Boston Scientific to immediately withdraw the Def. Brief in this regard. If it refuses to do so, however, Plaintiffs respectfully request that this Court enter an order denying Boston Scientific's Motion with respect to Plaintiffs' timely served and filed claim for breach of warranty.

## II. PLAINTIFFS DO NOT INTEND TO PURSUE A SEPARATE CLAIM FOR "MANUFACTURING DEFECT" AS SUCH CLAIM HAS BEEN CONSTRUED BY THIS COURT IN THIS MDL, BUT DOES NOT WAIVE OR OTHERWISE AGREE THAT EVIDENCE RELATING TO BOSTON SCIENTIFIC MANUFACTURING PROCESS WOULD BE RESTRICTED IN ANY WAY.

In light of the MDL Court's consistent rulings across pelvic mesh MDLs as to manufacturing defect claims, Plaintiffs do not intend to pursue a separate claim for "manufacturing defect," as such claim has been construed by the MDL Court (i.e., not manufactured in accordance with the design, or a departure from manufacturer's design specifications). *Cisson*, S.D.W.V. C.A. No. 2:11-cv-00195, Dkt. No. 272 (Memorandum Opinion and Order, Bard Motion for Partial Summary Judgment), p. 8 ("In sum, the plaintiffs have provided no evidence that the Avaulta product implanted in Ms. Cisson was not manufactured 'in accordance with the design,'…or that it deviated 'from some objective standard' or departed 'from the manufacturer's specifications established for the creation of the product.'"); *See also*, *Tyree v. Boston Scientific Corp.*, S.D.W.V. C.A. No. 2:12-cv-08633, Dkt. No. 446, pp. 5-6 ("The plaintiff points to no evidence that the Obtryx sling departed from its intended design at the time it left BSC's control. Accordingly, BSC's Motion for Summary Judgment on the plaintiff's strict liability for manufacturing defect claim is GRANTED, and this claim is DISMISSED.")

However, Plaintiffs do intend to present evidence that Boston Scientific's manufacturing process and the raw materials used in the manufacture of the Solyx resulted in defects in the product, and in support of Plaintiffs' negligence, failure to warn, design defect and punitive damages claims, which is consistent with the MDL Court's prior rulings. *See, e.g.*, *Cisson*, S.D.W.V. C.A. No. 2:11-cv-00195, Dkt. No. 272 (Memorandum Opinion and Order, Bard Motion for Partial Summary Judgment), p. 8 ("Although this process is part of the manufacturing process of the Avaulta products, it would fall within the category of a *design* defect and not a *manufacturing* defect if the process, albeit faulty, were the same for all of these products…[T]he alleged inadequate pore size and use of improper polypropylene material in the Avaulta products is a design issue."). By not contesting Boston Scientific's motion as to a "manufacturing defect" cause of action, Plaintiffs do not forego, waive or in any way agree that the use of any evidence relating to Boston Scientific's manufacturing process and raw materials should be restricted.

### III. BOSTON SCIENTIFIC AGAIN EITHER RECKLESSLY OR INTENTIONALLY OMITS IMPORTANT FACTS DEMONSTRATING VIABLE BREACH OF WARRANTY CLAIMS UNDER COLORADO LAW.[5]

Sufficient evidence exists to support Plaintiffs' breach of express warranty claim. In the Def. Brief, Boston Scientific erroneously asserts that "Ms. Bagwell cannot prove she exchanged any communications directly with Boston Scientific regarding the Solyx, whether before or after her surgery" and that she "cannot identify any affirmation of fact or promise made by Boston Scientific that was part of a 'basis for the bargain' between the parties." Def. Brief at 11-12. Boston Scientific claims "[t]here is neither evidence to indicate the terms of an alleged warranty nor evidence that such terms were expressly made to Ms. Bagwell, thereby inducing her to use the Solyx." Def. Brief at 11. Again, however, Boston Scientific ignores important

---

[5] Plaintiffs agree to dismiss their breach of implied warranty of fitness for a particular purpose.

14

facts, including testimony from Ms. Bagwell concerning a brochure she received, reviewed, and relied upon in deciding to undergo surgery to implant Boston Scientific's Solyx.  OSUMF No. 22-23.  When questioned about the brochure during her deposition, Ms. Bagwell testified:

> My understanding of [the brochure] when I received it was very good. It was going to fix what was going on...with my leakage. And Dr. Cowles felt very confident and this. When I read it, I felt very confident about this. My husband read it, he felt very confident about this. That's why I went through with the procedure.

OSUMF No. 22. Rather than acknowledge and address Ms. Bagwell's testimony regarding the brochure, Defendant instead acts like it never happened. Defendant's continued failure to acknowledge important facts throughout the Def. Brief is disappointing to say the least. Nevertheless, despite Boston Scientific's glaring omissions, Plaintiffs have demonstrated sufficient evidence to maintain a breach of warranty claim under Colorado law, including promises by Boston Scientific that became part of Ms. Bagwell's "basis for the bargain." C.R.S. § 4-2-313(1)(a).[6] As such, Ms. Bagwell's testimony concerning her reliance on Boston Scientific's brochure is sufficient to maintain this cause of action even though such evidence, in Colorado, is not even necessary where "the seller's statements were of a kind which naturally would induce the buyer to purchase the goods and that he did purchase the goods." *Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638 (10th Cir. Colo. 1991), *quoting Norton v. Lindsay*, 350 F.2d 46, 49 (10th Cir. 1965) (*internal citations omitted*). As Ms. Bagwell's treatment decisions were affected by Defendant's representations in the brochure, the Defendant's motion for partial summary judgment on Ms. Bagwell's breach of express warranty claim should be denied.

---

[6] Under Colorado law, a plaintiff does not need to have privity with the product manufacturer in order to successfully bring a claim of breach of express warranty. COLO. REV. STAT. ANN. § 4-2-318 (West 2012).

## IV. PLAINTIFFS HAVE MORE THAN SUFFICIENT EVIDENCE TO SUPPORT THEIR CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY.

Boston Scientific contends that Plaintiffs' claims for breach of implied warranty of merchantability should be dismissed for lack of evidence. A contract for the sale of goods by "a merchant with respect to goods of that kind" gives rise to an implied warranty of merchantability, unless properly excluded or modified. COLO. REV. STAT. ANN § 4–2–314(1). Merchantability means that the goods "[a]re fit for the ordinary purposes for which [they] are used," § 4–2–314(2)(c), "[a]re adequately contained, packaged, and labeled," § 4–2–314(2)(e), and "[c]onform to the promises or affirmations of fact made on the container or label if any," § 4–2–314(2)(f).

There is more than sufficient evidence in this case supporting Plaintiffs' claim for breach of implied warranty of merchantability. For example, Plaintiffs' expert Dr. Bruce Rosenzweig has opined that Boston Scientific utilized Marlex polypropylene resin in its Solyx device that was not intended for use as a permanent implant in the human body and which:

> creates a chronic foreign body reaction which lead to severe complications in patients, including the possibility of multiple erosions that can occur through one's lifetime, chronic and debilitating pelvic pain, recurrence, worsening incontinence, dyspareunia that can be chronic, wound infection, rejection of the mesh, sexual dysfunction, urinary and defecatory dysfunction, vaginal scarring, would healing problems, injury to ureters, bladder and urethra, pelvic abscess formation, risk of infection and/or the need for additional surgeries, among others. **As a result, the polypropylene in the BSC Mesh Products is not suitable for its intended application as a permanent prosthetic implant for stress urinary incontinence in women**.

OSUMF No. 28. Dr. Rosenzweig also reviewed the Solyx brochures and Directions for Use and opined that that Boston Scientific "chose not to warn physicians that BSC does not know if the devices are safe or effective for human use because BSC decided not to verify whether the devices were safe and effective for human use in an RCT" OSUMF No. 29, and are

16

deficient in various other ways as carefully outlined by Dr. Rosenzweig in his report. See OSUMF Nos. 28-32.

This evidence, when viewed in a light most favorable to Plaintiffs, and all reasonable inferences therefrom are drawn in their favor is more than sufficient to support Plaintiffs' breach of implied warranty of merchantability claim in this regard. *See e.g., Gossard v. Watson,* 122 Colo. 271, 221 P.2d 353 (1950). As such, Boston Scientific's motion to dismiss Plaintiffs' breach of implied merchantability claim should be denied.

## V.   SUFFICIENT EVIDENCE EXISTS TO SUPPORT AN INDEPENDENT CLAIM FOR FRAUDULENT CONCEALMENT.

Plaintiffs filed their fraudulent concealment claim not only to toll the running of Colorado's statutes of limitations but also as a "standalone" claim.  Under Colorado law, the elements of fraudulent concealment include:

> (1) The concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

BP America Production Co. v. Patterson, 263 P.3d 103, 109 (Colo. 2011) (citing *First Interstate Bank of Fort Collins, N.A. v. Piper Aircraft Corp.*, 744 P.2d 1197 (Colo. 1987)). Plaintiffs general experts intend on offering overwhelming evidence to support this claim at trial. For example, Dr. Rosenzweig spends a great deal of his time in his expert report outlining Boston Scientific sophisticated scheme to fraudulently conceal from the resin supplier, healthcare providers and patients that its polypropylene Marlex resin used in the Solyx device should not have been used "in medical applications involving permanent implantation in the human body"

17

OSUMF 32, and that it "did not conduct any clinical trials on…Solyx…prior to marketing [it] as a permanent medical implant in women." OSUMF 29. See also OSUMF 28, 30, 31.

Dr. Rosenzweig's report details the many serious risks and design defects Boston Scientific was aware of but concealed from healthcare providers and their patients. OSUMF 28-32. Furthermore, Ms. Bagwell testified that she relied upon a Boston Scientific brochure which fraudulently concealed the serious risks associated with Boston Scientific's slings, including the Solyx and she was injured as a result. OSUMF 22-24. This evidence, when viewed in a light most favorable to Plaintiffs, with all reasonable inferences drawn in their favor, is more than sufficient to support Plaintiffs' standalone fraudulent concealment claim. As such, Boston Scientific's motion should be denied.

## VI. SUFFICIENT EVIDENCE EXISTS TO SUPPORT PLAINTIFFS' LOSS OF CONSORTIUM CLAIM.

Defendant is correct that Mr. Bagwell's loss of consortium claim is derivative in nature. However, because summary judgment on Ms. Bagwell's substantive law should be denied, as addressed above, the Court should also deny summary judgment of Mr. Bagwell's loss of consortium claim.

## CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that the Court enter an Order denying Defendant's Motion for Partial Judgment with regard to her claims for Negligence (Count I), Strict Liability- Design Defect (Count II), Strict Liability-Failure to Warn (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count VI), Loss of Consortium (Count VII), Fraudulent Concealment (Count VIII) and Punitive Damages (Count IX).

Dated:  Nov. 20, 2020                                      Respectfully Submitted,

*/s/ Daniel Thornburgh*
Daniel Thornburgh, FL Bar No. 42661
Bobby J. Bradford, FL Bar No. 173223
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ PLLC**
17 East Main Street Suite 200
Pensacola, FL 32502
Telephone: 850.202.1010
dthornburgh@awkolaw.com
bbradford@awkolaw.com

ATTORNEYS FOR PLAINTIFF

19

**CERTIFICATE OF SERVICE**

        I hereby certify that on November 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

        Respectfully Submitted,

*/s/ Daniel Thornburgh*
Daniel Thornburgh, FL Bar No. 42661
Bobby J. Bradford, FL Bar No. 173223
**AYLSTOCK WITKIN KREIS & OVERHOLTZ PLLC**
17 East Main Street Suite 200
Pensacola, FL 32502
Telephone: 850.202.1010
dthornburgh@awkolaw.com
bbradford@awkolaw.com

ATTORNEYS FOR PLAINTIFF